1  Laurence M. Rosen, Esq. (SBN 219683)
2  THE ROSEN LAW FIRM, P.A.
3  355 South Grand Avenue, Suite 2450
   Los Angeles, CA 90071
4  Telephone: (213) 785-2610
   Facsimile: (213) 226-4684
5  Email: lrosen@rosenlegal.com
6
7  Counsel for Plaintiff

8              UNITED STATES DISTRICT COURT
9              CENTRAL DISTRICT OF CALIFORNIA

10  JOHN O'HANLON, Individually and on        Case No:
11  behalf of
    all others similarly situated,            **CLASS ACTION COMPLAINT FOR**
12                                             **VIOLATION OF THE FEDERAL**
                                               **SECURITIES LAWS**
13            Plaintiff,
14                                             JURY TRIAL DEMANDED
         v.
15
16  LECIL E. COLE, ARTHUR J. BRUNO,
    and CALAVO GROWERS, INC.,
17
18            Defendants.
19

20        Plaintiff John O'Hanlon, individually and on behalf of all other persons
21  similarly situated, by his undersigned attorneys, alleges in this Complaint the
22  following upon knowledge with respect to his own acts, and upon facts obtained
23  through an investigation conducted by his counsel, which included, inter alia: (a)
24  review and analysis of relevant filings made by Calavo Growers, Inc. ("Calavo
25  Growers" or the "Company") with the United States Securities and Exchange
26  Commission (the "SEC"); (b) review and analysis of Defendants' public documents,
27  conference calls and press releases; (c) review and analysis of securities analysts'
28

reports and advisories concerning the Company; and (d) information readily obtainable on the Internet.

Plaintiff believes that further substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery. Most of the facts supporting the allegations contained herein are known only to Defendants or are exclusively within their control.

## NATURE OF THE ACTION

1.    This is a federal securities class action on behalf of all persons and entities, other than Defendants, who purchased the common stock of Calavo Growers during the period of March 9, 2012 through January 15, 2015, inclusive (the "Class Period"), seeking to recover damages caused by Defendants' violations of federal securities laws (the "Class").

2.    Calavo Growers markets and distributes fresh avocados, prepared avocados, and other perishable foods to food distributors, produce wholesalers, supermarkets, convenience stores, and restaurants worldwide.

3.    In June 2011, the Company acquired Renaissance Food Group, LLC ("RFG"), a closely held fresh-food company that produces, markets and distributes nationally a portfolio of healthy, high quality lifestyle products for consumers via the retail channel. The transaction was for a combination of cash and stock, which includes earn-out payments based on financial performance.

4.    On January 15, 2015, the Company announced that after review and discussion with management and the Company's independent registered public accounting firm, Ernst & Young LLP ("EY"), it concluded that its consolidated financial statements for the fiscal years ended October 31, 2013 and 2012 and the quarters therein, as well as the quarters ended January 31, 2014, April 30, 2014 and July 31, 2014 (the "Relevant Periods") should no longer be relied upon.

5.    The Company also announced that EY's reports on the consolidated financial statements for the Relevant Periods, including EY's opinion on the

Class Action Complaint for Violation of the Federal Securities Laws

1  effectiveness of internal control over financial reporting could no longer be relied
2  upon as well.

3      6.    The Company attributed the non-reliance of its previously issued
4  financial statements and related EY's reports for the Relevant Period to a
5  misstatement in its treatment of contingent consideration in its acquisition of RFG in
6  June 2011.

7      7.    On this news, the Company's stock fell $4.72 per share or over 9% from
8  its previous closing price to close at $43.07 per share on January 15, 2015, damaging
9  investors.

10                          **JURISDICTION AND VENUE**

11     8.    The claims asserted herein arise under and pursuant to Sections 10(b)
12  and 20(a) of the Exchange Act (15 U.S.C. § 78j(b) and 78t(a)) and Rule 10b-5
13  promulgated thereunder (17 C.F.R. § 240.10b-5).

14     9.    This Court has jurisdiction over the subject matter of this action pursuant
15  to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331.

16     10.   Venue is proper in this Judicial District pursuant to Section 27 of the
17  Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1391(b) as the Company conducts
18  business in this District.

19     11.   In connection with the acts, conduct and other wrongs alleged herein,
20  defendants either directly or indirectly used the means and instrumentalities of
21  interstate commerce, including but not limited to the United States mails, interstate
22  telephone communications and the facilities of the national securities exchange.

23                                  **PARTIES**

24     12.   Plaintiff John O'Hanlon purchased Calavo Growers common stock
25  during the Class Period and has suffered damages as set forth in the accompanying
26  certification.

27     13.   Calavo Growers is a California corporation headquartered in Santa
28  Paula, California. It is a global leader in sorting, packing, and ripening avocadoes,

1  tomatoes and papayas under as well as preparing ready-to-eat products. During the

2  Class Period the Company's stock was traded on the NASDAQ Global Select Market

3  ("NASDAQ") under the symbol "CVGW."

4      14.    Defendant Lecil E. Cole ("Cole") has been the Company's Chairman of

5  the Board, Chief Executive Officer and President at all relevant times.

6      15.    Defendant Arthur J. Bruno ("Bruno") has been the Company's Chief

7  Operating Officer, Chief Financial Officer and Corporate Secretary at all relevant

8  times.

9      16.    Defendants Cole and Bruno are collectively referred to hereinafter as the

10  "Individual Defendants."

11      17.    Each of the Individual Defendants:

12          (a)    directly participated in the management of the Company;

13          (b)    was directly involved in the day-to-day operations of the

14  Company at the highest levels;

15          (c)    was privy to confidential proprietary information concerning the

16  Company and its business and operations;

17          (d)    was involved in drafting, producing, reviewing and/or

18  disseminating the false and misleading statements and information alleged

19  herein;

20          (e)    was aware of or recklessly disregarded the fact that the false and

21  misleading statements were being issued concerning the Company; and

22          (f)    approved or ratified these statements in violation of the federal

23  securities laws.

24      18.    As officers, directors, and controlling persons of a publicly-held

25  company whose common stock is and was registered with the SEC pursuant to the

26  Exchange Act, and was traded on NASDAQ and governed by the provisions of the

27  federal securities laws, the Individual Defendants each had a duty to disseminate

28  accurate and truthful information promptly with respect to the Company's financial

Class Action Complaint for Violation of the Federal Securities Laws

condition and to correct any previously-issued statements that had become materially misleading or untrue to allow the market price of the Company's publicly-traded stock to reflect truthful and accurate information.

19. Calavo Growers is liable for the acts of the Individual Defendants and its employees under the doctrine of respondeat superior and common law principles of agency as all of the wrongful acts complained of herein were carried out within the scope of their employment with authorization.

20. The scienter of the Individual Defendants and other employees and agents of the Company is similarly imputed to Calavo Growers under respondeat superior and agency principles.

## SUBSTANTIVE ALLEGATIONS
### Background

21. On May 26, 2011, the Company announced its entry into an agreement to acquire RFG (the "Acquisition Agreement"). The transaction was for a combination of cash and stock, including earn-out payments based on financial performance.

22. Pursuant to the Acquisition Agreement, the Company agreed to pay on the closing date approximately $16 million in a combination of cash and shares of unregistered Calavo common stock. The Company also agreed to pay RFG up to an additional approximate $80 million in earn-out consideration, payable in cash and shares of unregistered Calavo common stock if RFG attains specified financial goals for certain 12-month periods prior to the fifth anniversary of the closing.

23. On June 1, 2011 Calavo Growers completed the acquisition of RFG.

### Defendants' Materially False and Misleading Statements During the Class Period

24. The Class Period begins on March 9, 2012 when the Company filed a materially false and misleading Form 10-Q for the quarter ended January 31, 2012 (the "2012 1st Quarter 10-Q") with the SEC, which misstated that the Company's

Class Action Complaint for Violation of the Federal Securities Laws

financial statements and failed to disclose a material weakness in its internal control over financial reporting.

25.    The 2012 1st Quarter 10-Q was signed by Defendants Cole and Bruno. Attached to the 2012 1st Quarter 10-Q were the Sarbanes-Oxley Act of 2002 ("SOX") certifications signed by Defendants Cole and Bruno falsely attesting to the accuracy of the 2012 1st Quarter 10-Q.

26.    On January 14, 2013, the Company filed a materially false and misleading Form 10-K for the year ended October 31, 2012 (the "2012 10-K") with the SEC, which misstated that the Company's financial statements and failed to disclose a material weakness in its internal control over financial reporting.

27.    The 2012 10-K was signed by Defendants Cole and Bruno. Attached to the 2012 10-K were the SOX certifications signed by Defendants Cole and Bruno falsely attesting to the accuracy of the 2012 10-K.

28.    On January 13, 2014, the Company filed a materially false and misleading Form 10-K for the year ended October 31, 2013 (the "2013 10-K") with the SEC, which misstated that the Company's financial statements and failed to disclose a material weakness in its internal control over financial reporting.

29.    The 2013 10-K was signed by Defendants Cole and Bruno. Attached to the 2013 10-K were the SOX certifications signed by Defendants Cole and Bruno falsely attesting to the accuracy of the 2013 10-K.

30.    On September 15, 2014, the Company filed a materially false and misleading Form 10-Q for the quarter ended July 31, 2014 (the "2014 Third Quarter 10-Q") with the SEC, which misstated that the Company's financial statements and failed to disclose a material weakness in its internal control over financial reporting.

31.    The 2014 Third Quarter 10-Q was signed by Defendants Cole and Bruno. Attached to the 2014 Third Quarter 10-Q were the SOX certifications signed by Defendants Cole and Bruno falsely attesting to the accuracy of the 2014 Third Quarter 10-Q.

Class Action Complaint for Violation of the Federal Securities Laws

**THE TRUTH EMERGES**

32.    On January 15, 2015, the Company issued a press release announcing that the Company will record a non-cash charge totaling $88.9 million before tax ($54.0 million net of tax) over all periods related to a misstatement in its treatment of contingent consideration in its acquisition of RFG in June 2011.

33.    In a Form 8-K filed the same day, the Company stated that after review and discussion with management and EY, it concluded that its consolidated financial statements for the Relevant Periods should no longer be relied upon.

34.    The Company also stated that EY's reports on the consolidated financial statements for the Relevant Periods, including EY's opinion on the effectiveness of internal control over financial reporting could no longer be relied upon as well. As a result, Defendants Cole and Bruno concluded that a material weakness in the Company's internal control over financial reporting existed as of October 31, 2014 and as of the end of each of the Relevant Periods.

35.    The Company attributed the non-reliance of its previously issued financial statements and related EY's reports for the Relevant Period to a misstatement in its treatment of contingent consideration in its acquisition of RFG in June 2011.

36.    As a result, the Company indicated that it would include restated, audited financial statements – including the consolidated financial position as of October 31, 2013 and the consolidated results of its operations and its cash flows for each of the two years in the period ended October 31, 2013 – and the Company's evaluation of the effectiveness of its internal control over financial reporting in its 2014 Form 10-K.

37.    On this news, the Company's stock fell $4.72 per share or over 9% from its previous closing price to close at $43.07 per share on January 15, 2015, damaging investors.

**PLAINTIFF'S CLASS ACTION ALLEGATIONS**

Class Action Complaint for Violation of the Federal Securities Laws

38.     Plaintiff brings this action as a class action pursuant to Federal Rules of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all persons who purchased the common stock of Calavo Growers during the Class Period and who were damaged thereby. Excluded from the Class are Defendants, the officers and directors of the Company at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

39.     The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, Calavo Growers' common stock was actively traded on NASDAQ. While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are at least hundreds of members in the proposed Class. Members of the Class may be identified from records maintained by Calavo Growers or its transfer agent and may be notified of the pendency of this action by mail, using a form of notice customarily used in securities class actions.

40.     Plaintiff's claims are typical of the claims of the members of the Class, as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

41.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation. Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

a.     whether the federal securities laws were violated by Defendants' acts as alleged herein;

b.     whether the misstatements and omissions alleged herein were made with scienter;

Class Action Complaint for Violation of the Federal Securities Laws

c.      whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the business and operations of Calavo Growers; and

d.      to what extent the members of the Class have sustained damages, and the proper measure of damages.

42.    A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to redress individually the wrongs done to them. There will be no difficulty in the management of this action as a class action.

## Applicability of Presumption of Reliance:
## Fraud on the Market Doctrine

43.    At all relevant times, the market for Calavo Growers common stock was an efficient market for the following reasons, among others:

a.      Calavo Growers's stock met the requirements for listing, and was listed and actively traded on NASDAQ, a highly efficient and automated market;

b.      During the class period, on average, over hundreds of thousands of shares of Calavo Growers stock were traded on a weekly basis, demonstrating a very active and broad market for Calavo Growers and permitting a very strong presumption of an efficient market;

c.      Calavo Growers regularly communicated with public investors via established market communication mechanisms, including through regular disseminations of press releases on the national circuits of major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services;

Class Action Complaint for Violation of the Federal Securities Laws

d.    Calavo Growers was followed by several securities analysts employed by a major brokerage firm who wrote reports that were distributed to the sales force and certain customers of his/her brokerage firm during the Class Period. Each of these reports was publicly available and entered the public marketplace;

e.    Numerous FINRA member firms were active market-makers in Calavo Growers stock at all times during the Class Period; and

f.    Unexpected material news about Calavo Growers was rapidly reflected and incorporated into the Company's stock price during the Class Period.

44.    As a result of the foregoing, the market for Calavo Growers's common stock promptly digested current information regarding Calavo Growers from all publicly available sources and reflected such information Calavo Growers's stock price. Under these circumstances, all purchasers of Calavo Growers's common stock during the Class Period suffered similar injury through their purchase of Calavo Growers's common stock at artificially inflated prices, and a presumption of reliance applies.

### FIRST CLAIM
### Violation of Section 10(b) of The Exchange Act
### and Rule 10b-5 Promulgated Thereunder Against All Defendants

45.    Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

46.    During the Class Period, Defendants carried out a plan, scheme and course of conduct which was intended to and, throughout the Class Period, did: (1) deceive the investing public, including Plaintiff and other Class members, as alleged herein; and (2) cause Plaintiff and other members of the Class to purchase Calavo Growers's securities at artificially inflated prices. In furtherance of this unlawful

Class Action Complaint for Violation of the Federal Securities Laws

scheme, plan and course of conduct, each of the Defendants took the actions set forth herein.

47.     Defendants: (a) employed devices, schemes, and artifices to defraud; (b) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (c) engaged in acts, practices, and a course of business that operated as a fraud and deceit upon the purchasers of the Company's securities in an effort to maintain artificially high market prices for Calavo Growers's securities in violation of Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder. All Defendants are sued either as primary participants in the wrongful and illegal conduct charged herein or as controlling persons as alleged below.

48.     Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about the business, operations and future prospects of Calavo Growers as specified herein.

49.     These Defendants employed devices, schemes, and artifices to defraud while in possession of material adverse non-public information, and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of Calavo Growers's value and performance and continued substantial growth, which included the making of, or participation in the making of, untrue statements of material facts and omitting to state material facts necessary in order to make the statements made about Calavo Growers and its business operations and future prospects in the light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions, practices and a course of business that operated as a fraud and deceit upon the purchasers of Calavo Growers' securities during the Class Period.

Class Action Complaint for Violation of the Federal Securities Laws

50.    Each of the Individual Defendants' primary liability, and controlling person liability, arises from the following facts: (1) the Individual Defendants were high-level executives, directors, and/or agents at the Company during the Class Period and members of the Company's management team or had control thereof; (2) each of these Defendants, by virtue of his responsibilities and activities as a senior officer and/or director of the Company, was privy to and participated in the creation, development and reporting of the Company's financial condition; (3) each of these Defendants enjoyed significant personal contact and familiarity with the other Defendants and was advised of and had access to other members of the Company's management team, internal reports and other data and information about the Company's finances, operations, and sales at all relevant times; and (4) each of these Defendants was aware of the Company's dissemination of information to the investing public which they knew or recklessly disregarded was materially false and misleading.

51.    Defendants had actual knowledge of the misrepresentations and omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were available to them. Such Defendants' material misrepresentations and/or omissions were done knowingly or recklessly and for the purpose and effect of concealing Calavo Growers' operating condition and future business prospects from the investing public and supporting the artificially inflated price of its securities. As demonstrated by Defendants' overstatements and misstatements of the Company's financial condition throughout the Class Period, Defendants, if they did not have actual knowledge of the misrepresentations and omissions alleged, were reckless in failing to obtain such knowledge by deliberately refraining from taking those steps necessary to discover whether those statements were false or misleading.

52.    As a result of the dissemination of the materially false and misleading information and failure to disclose material facts, as set forth above, the market price

Class Action Complaint for Violation of the Federal Securities Laws

of Calavo Growers' securities was artificially inflated during the Class Period. In ignorance of the fact that market prices of Calavo Growers' publicly-traded securities were artificially inflated, and relying directly or indirectly on the false and misleading statements made by Defendants, or upon the integrity of the market in which the common stock trades, and/or on the absence of material adverse information that was known to or recklessly disregarded by Defendants but not disclosed in public statements by Defendants during the Class Period, Plaintiff and the other members of the Class acquired Calavo Growers' securities during the Class Period at artificially high prices and were or will be damaged thereby.

53.    At the time of said misrepresentations and omissions, Plaintiff and other members of the Class were ignorant of their falsity, and believed them to be true. Had Plaintiff and the other members of the Class and the marketplace known the truth regarding Calavo Growers' financial results, which was not disclosed by Defendants, Plaintiff and other members of the Class would not have purchased or otherwise acquired their Calavo Growers' securities, or, if they had acquired such securities during the Class Period, they would not have done so at the artificially inflated prices that they paid.

54.    By virtue of the foregoing, Defendants have violated Section 10(b) of the Exchange Act, and Rule 10b-5 promulgated thereunder.

55.    As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases and sales of the Company's securities during the Class Period.

56.    This action was filed within two years of discovery of the fraud and within five years of each plaintiff's purchases of securities giving rise to the cause of action.

Class Action Complaint for Violation of the Federal Securities Laws

**SECOND CLAIM**
**Violation of Section 20(a) of**
**The Exchange Act Against the Individual Defendants**

57.    Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

58.    The Individual Defendants acted as controlling persons of Calavo Growers within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their high-level positions, agency, ownership and contractual rights, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false financial statements filed by the Company with the SEC and disseminated to the investing public, the Individual Defendants had the power to influence and control, and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements that Plaintiff contends are false and misleading. The Individual Defendants were provided with or had unlimited access to copies of the Company's reports, press releases, public filings and other statements alleged by Plaintiff to have been misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or to cause the statements to be corrected.

59.    In particular, each of these Defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

60.    As set forth above, Calavo Growers and the Individual Defendants each violated Section 10(b), and Rule 10b-5 promulgated thereunder, by their acts and omissions as alleged in this Complaint.

61.    By virtue of their positions as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and other members of the

Class Action Complaint for Violation of the Federal Securities Laws

1  Class suffered damages in connection with their purchases of the Company's

2  securities during the Class Period.

3       62.    This action was filed within two years of discovery of the fraud and

4  within five years of each Plaintiff's purchases of securities giving rise to the cause of

5  action.

6       **WHEREFORE**, Plaintiff prays for relief and judgment, as follows:

7       a.    Determining that this action is a proper class action, designating Plaintiff

8  as Lead Plaintiff and certifying Plaintiff as a class representative under Rule 23 of the

9  Federal Rules of Civil Procedure and Plaintiff's counsel as Lead Counsel;

10      b.    Awarding compensatory damages in favor of Plaintiff and the other

11 Class members against all Defendants, jointly and severally, for all damages

12 sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial,

13 including interest thereon;

14      c.    Awarding Plaintiff and the Class their reasonable costs and expenses

15 incurred in this action, including counsel fees and expert fees; and

16      d.    Such other and further relief as the Court may deem just and proper.

17                          **JURY TRIAL DEMANDED**

18      Plaintiff hereby demands a trial by jury.

19
   Dated: January 21, 2015              Respectfully submitted,
20

21                                      **THE ROSEN LAW FIRM, P.A.**

22                                      /s/ Laurence Rosen
23                                      Laurence M. Rosen, Esq. (SBN 219683)
                                        355 S. Grand Avenue, Suite 2450
24                                      Los Angeles, CA 90071
25                                      Telephone: (213) 785-2610
                                        Facsimile: (213) 226-4684
26                                      Email: lrosen@rosenlegal.com

27
28                                      Counsel for Plaintiff

                              - 15 -
──────────────────────────────────────────
          Class Action Complaint for Violation of the Federal Securities Laws

## Certification and Authorization of Named Plaintiff Pursuant to Federal Securities Laws

The individual or institution listed below (the "Plaintiff") authorizes and, upon execution of the accompanying retainer agreement by The Rosen Law Firm P.A., retains The Rosen Law Firm P.A. to file an action under the federal securities laws to recover damages and to seek other relief against Calavo Growers Inc.. The Rosen Law Firm P.A. will prosecute the action on a contingent fee basis and will advance all costs and expenses. The Calavo Growers Inc.. Retention Agreement provided to the Plaintiff is incorporated by reference, upon execution by The Rosen Law Firm P.A.

| | |
|---|---|
| **First name:** | John |
| **Middle initial:** | |
| **Last name:** | OHanlon |
| **Address:** | Redacted |
| **City:** | |
| **State:** | |
| **Zip:** | |
| **Country:** | |
| **Facsimile:** | |
| **Phone:** | |
| **Email:** | |

Plaintiff certifies that:

1. Plaintiff has reviewed the complaint and authorized its filing.

2. Plaintiff did not acquire the security that is the subject of this action at the direction of plaintiff's counsel or in order to participate in this private action or any other litigation under the federal securities laws.

3. Plaintiff is willing to serve as a representative party on behalf of a class, including providing testimony at deposition and trial, if necessary.

4. Plaintiff represents and warrants that he/she/it is fully authorized to enter into and execute this certification.

5. Plaintiff will not accept any payment for serving as a representative party on behalf of the class beyond the Plaintiff's pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the class as ordered or approved by the court.

6. Plaintiff has made no transaction(s) during the Class Period in the debt or equity securities that are the subject of this action except those set forth below:

Acquisitions:

| Type of Security | Buy Date | # of Shares | Price per Share |
|---|---|---|---|
| Common Stock | 11/6/2014 | 100 | 48.33 |
| Common Stock | 11/7/2014 | 100 | 48.60 |
| Common Stock | 11/11/2014 | 116 | 47.50 |

7. I have not served as a representative party on behalf of a class under the federal security laws during the last three years, except if detailed below. [ ]

I declare under penalty of perjury, under the laws of the United States, that the information entered is accurate:          **YES**

**Certification for John OHanlon (cont.)**

By clicking on the button below, I intend to sign and execute
this agreement and retain the Rosen Law Firm, P.A. to
proceed on Plaintiff's behalf, on a contingent fee basis.          **YES**

Signed pursuant to California Civil Code Section 1633.1, et seq. - and the Uniform Electronic
Transactions Act as adopted by the various states and territories of the United States.

Date of signing: 01/21/2015